IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA E. REINHOLD and            NO. 1:11-CV-605
KENNETH REINHOLD

v.                                 JUDGE CONNER

COUNTY OF YORK, PENNSYLVANIA,      MAGISTRATE JUDGE METHVIN
BONNIE JULIUS
VICTORIA A. MASEK
THERESE R. SCOTT
DIANE L. CHANTILES
BILLA R. JAMISON
JOHN DOE
DOMESTIC RELATIONS SECTION,
    YORK COUNTY COURT OF
    COMMON PLEAS

REPORT AND RECOMMENDATION
ON MOTIONS TO DISMISS
(Docs. 33, 35)

Barbara Reinhold and her husband, Kenneth Reinhold, filed this

employment-related suit in the York County Court of Common Pleas on March 24,

2011. Named as defendants in the original complaint were the County of York,

Pennsylvania; Victoria A. Masek, Director of York County Domestic Relations;

Therese R. Scott, Domestic Relations Supervisor; Diane L. Chantiles, Assistant

Director of York County Domestic Relations; and Billa R. Jamison, Domestic

Relations Supervisor (collectively, "York Defendants") and Bonnie Julius, York

County Deputy Court Administrator. The York Defendants (all defendants but

Julius) removed the suit to this court on March 31, 2011 (Doc. 1). Plaintiffs filed

an amended complaint on November 30, 2011 which added the Domestic

Relations Section of the York County Court of Common Pleas (DRS) as a

defendant. (Doc. 29).[1]

Barbara Reinhold's claims include violation of her rights under the Family

Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654; the Americans with

Disabilities Act, ("ADA"), 42 U.S.C. 12101 *et seq*.; the Pennsylvania Human

Relations Act, ("PHRA"), 43 P. S. §§ 951–963;  and the Age Discrimination in

Employment Act, ("ADEA"), 29 U.S.C. §§ 621–634, *et seq*., as well as state law

claims. Kenneth Reinhold brings one claim for loss of consortium (Count XIV).

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

Before the court are motions to dismiss filed by the defendants.[2, 3] The

---

[1] DRS and Julius are the "Domestic Relations" defendants.

[2] The York Defendants filed a motion to dismiss on December 14, 2011 (Doc. 33). A
supporting brief was filed on December 28, 2011 (Doc. 40). Plaintiffs filed a brief in
opposition on January 11, 2012 (Docs. 43, 44) (same document), to which the York
defendants filed a reply brief on January 25, 2012 (Doc. 45).

[3] The DRS Defendants filed a motion to dismiss on December 16, 2011 (Doc. 35). A
supporting brief was filed on December 30, 2011 (Doc. 42). Plaintiffs filed a brief in
opposition to the motion on January 11, 2012. (Docs. 43, 44) (same document).

motions have been referred to the undersigned for a Report and Recommendation and are now ripe for disposition.[4]

## FINDINGS AND RECOMMENDATIONS

### I. Background

For purposes of this analysis, plaintiffs' factual averments will be accepted as true and are construed in the light most favorable to plaintiffs. Plaintiffs contend as follows:

Barbara Reinhold was employed by York County Domestic Relations from January 22, 1996 until September 14, 2009. (Doc. 29 ¶ 10). On January 5, 2009, Reinhold was admitted to the hospital for a urinary tract infection, diabetes, renal lithiasis and dysuria. (*Id.*). On January 6, 2009, Chantiles, Reinhold's supervisor, contacted Julius, a deputy court administrator, and Jamison, also a domestic relations supervisor, to advise that plaintiff had been given FMLA paperwork and that she had available FMLA leave time. (*Id.* ¶ 12). Plaintiff returned to work on or about January 12, 2009, and Julius acknowledged receiving a physician's certification and confirmed that Reinhold was eligible for FMLA. (*Id.* ¶ 15-16).

---

[4] Judge Conner referred the pending motions to the undersigned Magistrate Judge on December 15, 2011 (Doc. 34) and December 19, 2011 (Doc. 36).

4

Reinhold's annual 12-week FMLA leave period renewed on February 21, 2009

(*Id*., ¶ 14, 17). ) Reinhold underwent a medical procedure on April 28-29, 2009.

On May 29, 2009, Therese Scott, a domestic relations supervisor, contacted

Julius, Jamison, Chantiles and Victoria Masek, another domestic relations

supervisor, regarding Reinhold's need for FMLA regarding a urology issue. (*Id*. ¶

21). Scott informed Reinhold that she needed to provide a physician's note linking

her medical issue to the prior FMLA issue(s). (*Id*.). On June 2, 2009, Scott and

Jamison exchanged emails regarding Reinhold's FMLA needs and whether it

required a new claim to be opened or if the prior claim should be reopened. (*Id*. ¶

23).

On July 20, 2009, Reinhold provided a note from her urologist, Howard

Mirskey, M.D., who released her to return to work on July 21, 2009. (*Id*. ¶ 24). On

July 22, 2009, Masek sent an email to Scott, Julius, Jamison and Chantiles

concerning Reinhold's ongoing medical issues. (*Id*. ¶ 25). The email stated that

Reinhold "comes to work feeling terrible and has a constant need to use the

restroom," and acknowledged that Reinhold's physician stated she should be

excused to use the restroom as needed as she will need to make frequent trips

there. (*Id*. ¶ 26, 27; Doc. 29, Ex. 8). The email referenced Reinhold's discussion

with her supervisor that she goes to the bathroom every half hour for

approximately 10 minutes and further stated Masek found it "difficult to
accommodate someone to this degree for a variety of reasons." (*Id*. ¶ 28).

Reinhold alleges that the defendants began to systematically seek to remove
her from her job by engaging in the following activities:

    a.    telling her she was using too much time going to the bathroom;

    b.    telling her that two times per hour was too much for bathroom breaks;

    c.    timing her bathroom breaks;

    d.    telling her that they knew she was sleeping in the bathroom;

    e.    continuing to harass her until she agreed to use Depends
        undergarments as an alternative to manage her health problems,
        conditioned upon no odors being found on Reinhold.

(*Id*. ¶ 29 A–E, I). Jamison informed Masek that Julius wanted to know how much
time Reinhold was away from her desk, as Reinhold had indicated it was only for
1–2 minutes at a time. (*Id*. ¶ 29 G). Additionally, Julius and other supervisors
directed Reinhold's co-workers to monitor her by performing smell checks, which
consisted of walking by her desk 15–20 times per day to smell her. (*Id*. ¶ 29 J).

Reinhold also alleges that she was denied her requested accommodation to
check her blood sugar levels while at work. (*Id*. ¶ 29 K). Additionally, on
August 9, 2009, Reinhold states that she was suffering a serious headache and
closed her eyes to alleviate the pain but that several individuals approached her

and harassed her, claiming she was sleeping on the job. (*Id*. ¶ 29 L). As a result of

this incident, Reinhold received a one-day suspension. (*Id*. ¶ 29 M). Reinhold

alleges that, in seeking an opportunity to fire her, the defendants continued to

monitor her about the drowsiness she experienced from her medication. (*Id*. ¶ 29

N). Reinhold maintains that, although Masek advised her to pick up her retirement

paperwork on August 17, 2009, she refused to retire. (*Id*. ¶ 29 O, P). After another

incident of resting her eyes, Reinhold was again accused of sleeping on the job

and given a three-day suspension as well as being required to sign a "Last Chance

Agreement." (*Id*. ¶ 29 P).

Reinhold avers that she was consistently told that her requests for

accommodations and medical leave would not be approved and that she had used

up too much leave time. (*Id*. ¶ 29 Q). On September 9, 2009, Reinhold was taken

to the emergency room from work. (*Id*. ¶ 29 R). Reinhold maintains that this

hospital trip was due to significant emotional distress from work as well as her

diabetic condition. (*Id*. ¶ 29 S). Upon her return to work on September 14, 2009,

Masek and Scott terminated Reinhold for allegedly sleeping on the job on

September 8, 2009. (*Id*. ¶ 29 T).

On or about the date she was terminated, Reinhold alleges that supervisors

and/or other employees conducted a search of her desk, without consent, seizing

personal papers, Union notebooks, and other personal items which were never returned. (*Id*. ¶ 30). She pursued the union grievance process and subsequently filed an application with the PHRC, which claimed it was two weeks late. (*Id*. ¶ 31). The PHRC forwarded Reinhold's information to the EEOC which, by letter dated March 1, 2011, informed her it would not be filing a charge because it had determined that she was discharged for a legitimate, non-discriminatory reason. (*Id*. ¶¶ 32, 33). The letter also invited Reinhold to contact the EEOC to discuss the matter further. (*Id*. ¶ 33). Reinhold called Rudolph White, the EEOC investigator, on two occasions, but her phone calls were not returned. (*Id*. ¶¶ 34, 35). Reinhold alleges that White also failed to respond to a letter and, as a result, she filed the present action believing that the March 1, 2011 letter from the EEOC may have commenced the statute of limitations period. (*Id*. ¶ 36; Doc. 1).

A follow-up letter to the EEOC dated June 7, 2011 as to the status of the EEOC charge resulted in a return correspondence indicating that the EEOC would file a charge, which it sent to Reinhold for review.[5] (*Id*. ¶ 38). The PHRC subsequently notified Reinhold on September 26, 2011 that the EEOC would be handling her case in accordance with a sharing agreement. (*Id*. ¶ 40). The EEOC informed Reinhold that the Department of Justice would handle the matter. (*Id*. ¶

---

[5] EEOC charge number 530-2010-02876

41). The DOJ issued a right to sue letter to Reinhold on October 26, 2011. (*Id*. ¶

42).

Reinhold thereafter filed the amended complaint on November 30, 2011.

(Doc. 29). The amended complaint brings 14 counts against defendants:[6]

| Count I | Agency-Respondeat Superior |
|---|---|
| Count II | Intrusion upon the seclusion of another |
| Count III | Defamation/Slander |
| Count IV | Fourth Amendment illegal search and seizure (Section 1983) |
| Count V | Negligent supervision |
| Count VI | ADA – reasonable accommodation/disability discrimination |
| Count VII | ADA – Discharge/disability discrimination |
| Count VIII | ADA – Retaliation/discharge |
| Count IX | FMLA (interference) |
| Count X | FMLA (retaliation) |
| Count XI | Intentional infliction of emotional distress |
| Count XII | Wrongful termination (ADA, ADEA, FMLA) |
| Count XIII | ADEA/PHRA– Age discrimination |
| Count XIV | Loss of consortium (Kenneth Reinhold) |

---

[6] Counts I, VI, VII, VIII and XIII are brought against York County and DRS.  All other claims are asserted against all defendants. (*See* Doc. 29).

9

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. When considering a motion to dismiss, the court must "accept all [of plaintiff's] factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). *See also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1322–23 (2011).

The complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must do more than

present "bald assertions" and "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

*Twombly*, 550 U.S. at 545 (citations omitted). Plaintiffs must nudge their claims "across the line from conceivable to plausible." *Id.* at 570. *See also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

A plaintiff "armed with nothing more than conclusions" is not entitled to discovery. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

The "plausible grounds" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim for relief. *Twombly*, 550 U.S. at 556. Determining plausibility is

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950 (*citing Twombly*, 550 U.S. at 557–58).

Inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. Discussion

### A.  Failure to Exhaust (Counts VI-VIII, and XIII)

#### 1. Applicable Law

The ADA requires pursuit of administrative remedies before a plaintiff may file a complaint in court. *Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir.1999). "[A] party who brings an employment discrimination claim under Title I of the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act of 1964 ["Title VII"], 42 U.S.C. § 2000e–5." *Id*.

The ADEA , a legislatively enacted provision that prohibits discrimination on the basis of an individual's age, mirrors Title VII in its substantive provisions.

12

*See e.g.*, *Ahlmeyer v. Nevada System of High Ed.*, 555 F.3d 1051, 1058 (9th Cir. 2009) ("Title VII of the Civil Rights Act of 1964 provides an avenue for plaintiffs to assert claims for employment discrimination based on 'race, color, religion, sex or national origin ... In its substantive provisions, the ADEA mirrors Title VII...."). Like other federal anti-discrimination laws, the ADEA requires that claimants first exhaust their administrative remedies before resorting to litigation. *See* 29 US.C. §§ 626, 633. The PHRA, too, requires exhaustion of remedies prior to bringing a civil action in court. 43 P.S. §962(c).[7]

Under the procedural requirements of Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before filing a lawsuit. *Barzanty v. Verizon Pa*, 361 F. App'x. 411, 413 (3d Cir.2010), citing 42 U.S.C. §§ 2000e–5(b), (e)(1), (f)(1). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Barzanty, supra*, 361 F. App'x. at 413–14, citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir.1996).

---

[7]  The court will analyze Reinhold's ADA, ADEA and PHRA claims under the same standards inasmuch as courts generally have interpreted the PHRA's parallel provisions in Title VII, the ADA, or the ADEA in accordance with its federal counterparts. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996).

Generally, a complaint alleging discrimination under the ADA, ADEA or PHRA will be dismissed for failure to exhaust administrative remedies if a supporting EEOC charge was not filed within 180 or 300 days, depending on state law, of notification to the employee of the adverse employment action. *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382 (3d Cir.2007). In a deferral state like Pennsylvania, which has an agency authorized to grant relief for federally prohibited employment discrimination, the charge must be filed within 300 days of the alleged unlawful employment practice. *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (3d Cir.1992) (citing *Bihler v. Singer Co.*, 710 F.2d 96, 97 (3d Cir. 1983)).

The EEOC filing deadlines function as statutes of limitations. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980). The limitations period begins at the time of the alleged discrimination. *Id*. at 258; *see also Watson* v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000).

### 2. The York Defendants

The York Defendants contend, without elaboration, that Reinhold has failed to exhaust her ADA, ADEA and PHRA claims as required prior to bringing suit in federal court. These defendants argue that plaintiff's amended complaint "fails to

plead that she filed a charge of discrimination with either the EEOC or PHRC within the strict filing deadlines." (Doc. 40, p. 16).

While the exhibits suggest plaintiff's charge was not filed until 2010 or 2011, Reinhold contends any delay was due to communication errors on the part of the EEOC.[8] Exhibits 13–18 attached to plaintiffs' amended complaint (Doc. 29, pp. 84-100) make clear that plaintiff received a right to sue letter from the EEOC on its behalf, and that of the PHRC, and that plaintiff has therefore exhausted her administrative remedies as to York County. The York Defendants offer no evidence establishing that plaintiffs violated the filing deadlines, or that the court should ignore any waiver of those deadlines by the EEOC.

However, there is no evidence in the record that plaintiff filed an administrative claim as to the DRS, or as to any individual defendants. The Charge of Discrimination names only York County, and makes no allegations against any other defendants. (Doc. 29, Ex. 16).[9] Nor has Reinhold pled that these other defendants were named in her charge or had notice of her claims. To properly exhaust administrative remedies with respect to a particular defendant, that

---

[8] Reinhold states that the PHRC stated the complaint was filed two weeks late, but the record shows the complaint progressed through the administrative process as against York County. (Doc. 44, p. 11).

[9] The Charge of Discrimination is neither signed nor dated.

defendant must ordinarily have been named in the EEOC's charge. *Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 251 (3d Cir.1990). Accordingly, Reinhold has exhausted her administrative remedies only as to York County, and not as to DRS or the individual defendants. *See Urey v. East Hempfield Township*, 2009 WL 561664 *3 (E.D. Pa.2009) (noting that courts have dismissed claims where the individual defendants were not named as respondents and where the body of the charge did not contain allegations against the defendants.) (citations omitted); *Smith v. Delware River Stevedores*, No. 07-1864, 2008 WL 4890135, at *3 & n.2 (E.D. Pa. Nov.10, 2008) (when a defendant is unnamed in the formal EEOC charge but is named "in the body of the formal charge," the plaintiff can be found to have satisfied exhaustion requirements as to that defendant. However, the exhaustion requirement is not satisfied as to the unnamed defendant if the description in the plaintiff's EEOC charge did not even mention that defendant. ) (citing *DeLa Cruz v. Piccari Press*, 521 F. Supp.2d 424, 431–32 (E.D. Pa. 2007)). Accordingly, the motion to dismiss should be granted and the claims against the defendants, except York County, be dismissed, without prejudice, for failure to exhaust administrative remedies.

3. DRS

Because the copy of the EEOC charge of discrimination attached to the amended complaint names only York County as the entity which allegedly discriminated against Reinhold, there is no record that plaintiff filed an administrative claim against DRS or Julius. (*See* Doc. 29, p. 93 (Exhibit 16)). Reinhold has not alleged that these parties were named or that they had notice of her charges of discrimination. Moreover, DRS states that "DRS is a separate entity from the County; it is a state entity of the Pennsylvania judiciary, while the County is a local government entity." (Doc. 42, p. 23). Accordingly, the ADA and ADEA claims (Counts VI–VIII and XIII) should be dismissed as to DRS and Julius, without prejudice.

B.  *Respondeat superior liability*

Respondeat superior is "a means of imputing liability to an employer for the actions of its agents, servants, or employees." *Care v. Reading Hosp. and Med. Ctr.*, No. 2003-CV-04121, 2004 WL 728532, at *12 (E.D. Pa. Mar.31, 2004). "Liability based on respondeat superior arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d

Cir.2010) (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Count I alleges that York County and the DRS are vicariously liable for the alleged actions of their managers and employees. York County contends that it has no respondeat superior liability since it was not the employer of the individual defendants. The County contends that plaintiffs' claims are asserted against employees assigned to "court administration" or "domestic relations," and that in Pennsylvania, a county domestic relations section "is merely a part of the court of common pleas for that county." (Doc. 40, p. 16). The County argues that plaintiffs' amended complaint "is completely lacking in any allegations as to the question of control in support of an employer/employee relationship." (*Id*., p. 17).

Reinhold contends that exhibits attached to her amended complaint support the allegations that York County employees exercised supervision and control over her employment conditions and benefits, along with DRS employees. Plaintiff points to a handwritten note placed on a copy of a July 27, 2009 email which references instructions from Robert Nace, whom plaintiff contends is Executive Director of York County Human Resources. (Exhibit 10, Doc. 1-2, p. 78; Plaintiff's Opposition, Doc. 44, p.13). Plaintiff also contends that Renay

James, referred to in three other emails, is with the York County Controller's Office (*Id.*; *see also* Doc. 1-2, pp. 75, 76, 82).

While defendants maintain that the nature of the employer-employee relationship must be examined, including the control exercised, to determine the employer status, such an inquiry goes beyond the scope of a motion to dismiss. As noted, Reinhold has supported her allegations that both York County and DRS were employers  through the emails in which her employment was discussed. Several paragraphs of the amended complaint aver that the defendants qualify as "employers" under the applicable law. Accordingly, this satisfies Reinhold's burden of alleging York County and DRS are "employers" for purposes of the motions to dismiss.

However, the instant complaint alleges "Agency– Respondeat Superior" as Count I. There is no separate cause of action for respondeat superior liability. *See, e.g., Booker v. National R.R. Passenger Corp.,* ___ F.Supp.2d ___, 2012 WL 2953721, *9 (E.D. Pa. July 20, 2012) ("[T]here is no independent cause of action for respondeat superior under Pennsylvania law."); *Ford Motor Credit Co. LLC v. Maxwell*, No. 10–1926, 2012 WL 1677248, at *2 (M.D. Pa. May 14, 2012). Recovery under this theory requires an agent's liability for an underlying claim which is imputed to its principle or employer. *Care v. Reading Hosp. and Medical*

19

*Center*, *supra* at \*13 ("Respondeat superior merely connotes a doctrine of imputation once an underlying theory of liability has been established. It is not a separate cause of action.") (quoting *Simcox v. National Rolling Mills, Inc.*, No. Civ.A. 90–1295, 1990 WL 74356, \*3 (E.D. Pa. June 4, 1990).[10]

Accordingly, the motions to dismiss should be granted as to Count I as "respondeat superior" liability is not a separate claim.

## C. Eleventh Amendment

The defendants also assert that the Eleventh Amendment shields them from immunity. The Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment precludes private federal litigation against a state and its agencies. *Hans v. Louisiana*, 134 U.S. 1, 15–16

---

[10] The doctrine of respondeat superior does not apply to constitutional claims. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior."); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of respondeat superior) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra*, 556 U.S. at 677, 129 S.Ct. at 1949.

(1890); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000);

*Lombardo v. Pennsylvania*, 540 F.3d 190, 194–95 (3d Cir. 2008). Generally,

Eleventh Amendment immunity also extends to state officials sued in their official

capacity because in such a case the state is the real party in interest. *Melo v. Hafer*,

912 F.2d 628, 635 (3d Cir.1990). Only two exceptions apply where an individual

may sue a state. First, Congress may authorize such a suit to enforce the

Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Second, a state

may waive its sovereign immunity by consenting to suit. *Clark v. Barnard*, 108

U.S. 436, 447-48 (1883).

In the present matter, the defendants contend that, as part of the Court of

Common Pleas, DRS is a state agency and thus immune under the Eleventh

Amendment. Pennsylvania's judicial districts are arms of the state entitled to

Eleventh Amendment immunity. *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233,

240 (3d Cir.2005). The probation and parole departments, as well as DRS, as arms

of the judicial districts and thus the State, are ordinarily entitled to Eleventh

Amendment. *Benn*, 426 F.3d at 241; *Haybarger v. Lawrence County Adult

Probation and Parole*, 551 F.3d 193, 201 (3d Cir. 2008); *Rogers v. Bucks County

Domestic Relations Section*, 959 F.2d 1268, 1271 n. 4 (3d Cir.1992). This

immunity extends to the individual defendants, as employees of the judicial

district and thus the State, to the extent they are sued in their official capacities.

*Wattie-Bey v. Attorney General, Commonwealth of Pennsylvania*, No. 1:10-CV-2224, 2010 WL 4916710, *5 (M.D. Pa. Nov. 1, 2010).

In response, plaintiffs advance only the limited and conclusory argument that defendants unlawfully obtained (via spying during her use of the bathroom), and unlawfully communicated, information about Reinhold's medical condition in violation of her privacy and HIPPA rights.[11] Plaintiffs contend, therefore that the disclosures were "unlawful." (Doc. 44, p. 17).

The immunity afforded by the Eleventh Amendment applies to Reinhold's claims under the ADEA, ADA (Title I) and §1983. *See Shahin v. Delaware*, 424 F. App'x 90, 92 (3d Cir.2011) ("The Supreme Court has held, however, that the ADEA does not abrogate the states' Eleventh Amendment immunity to suits by private individuals for damages."); *Banks v. Court of Common Pleas FJD*, 342 F. App'x. 818, 820–21 (3d Cir. 2009) ("suits seeking money damages against the state [or its instrumentalities] for an alleged failure to comply with Title I of the ADA are barred by the Eleventh Amendment."); *Callahan v. City of Philadelphia*, 207 F.3d 668, 674 (3d Cir.2000) ("all components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section

---

[11] *See* Doc. 44, pp. 15-16.

1983 purposes."); *O'Donnell v. Pennsylvania Dept. of Corrections*, 790 F.Supp.2d 289, 305 (M.D. Pa. 2011) (the Eleventh Amendment bars suits against the Commonwealth and its subsidiary agencies brought pursuant to the ADA and the PHRA.). Additionally, the defendants are immune from Reinhold's state law claims under the Eleventh Amendment. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 541-42, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002) (in enacting the supplemental jurisdiction statute, 42 U.S.C. § 1367(a), Congress did not abrogate Eleventh Amendment immunity to non-consenting state defendants).

The Eleventh Amendment bars Reinhold's self-care claims under the FMLA claims as to York County and DRS. *See Banks v. Court of Common Pleas FJD*, 342 F. App'x. 818, 821 (3d Cir.2009) ("private suits for damages may not be brought against states for alleged violations of the FMLA, which arise under the Act's self-care provision"); *O'Donnell v. Pa. Dep't of Corr.*, 790 F.Supp.2d 289, 298–99 (M.D. Pa.2011) (dismissing the plaintiffs claim because the Eleventh Amendment bars claims against the state's Department of Corrections predicated on alleged violations of the self-care provision of the FMLA). However, such claims are not precluded against the individual defendants. *Haybarger v. Lawrence County Adult Probation and Parole,* 667 F.3d 408, 417 (3d Cir. 2012) (finding individual

liability is available under the FMLA); *Snyder v. Pennsylvania*, No. 09-1814, 2010 WL 4362440, *6 (M.D. Pa. Oct. 27, 2010).

Additionally, any claim for prospective injunctive relief against a state official acting in her official capacity is permitted. *Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 178 (3d Cir.2002). "The Eleventh Amendment has not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for violations of federal law." *Id*. Thus, to the extent the amended complaint seeks such relief, it is not precluded by the Eleventh Amendment.

As noted above, however, this action was removed from state court to this forum by the York defendants. The effect of this removal invokes the general principle that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter in federal court. *Lombardo*, 540 F. 3d at 196–97 (quoting *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 624, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)). Accordingly, by removing this action, the York defendants waived immunity under the Eleventh Amendment. The motion to dismiss should, therefore, be denied on this issue as to the York defendants.

However, neither Julius nor DRS, who was added as a defendant after removal, joined in the removal. Thus, Eleventh Amendment immunity shields them

from liability for Reinhold's ADA claims (Counts VI–VIII), ADEA claim (Count XIII), 1983 claim (Count IV) and state law claims. (Counts II, III, V, XI, XII and XIV). *See Ali v. Lyons*, No. 03-6947, 2004 WL 835345, *2 (E.D. Pa. April 16, 2004). Additionally, the Supreme Court recently affirmed that the Eleventh Amendment bars suits against States under the self-care provision of the FMLA. *See Coleman v. Court of Appeals of Maryland*, —— U.S. ——, 132 S.Ct. 1327, 182 L.Ed.2d 296, 2012 WL 912951, at *3 (Mar. 20, 2012) (plurality opinion). The Supreme Court held that while the family care provision of the FMLA was directed at an identified pattern of gender-based discrimination, the self care provision was not, and that therefore the Eleventh Amendment barred such suits against the states. The court wrote, "[i]n agreement with every Court of Appeals to have addressed this question, this Court now holds that suits against States under [the self-care] provision . . . are barred by the States' immunity as sovereigns in our federal system." *Id*. *See also Harter v. County of Washington*, No. 11-588, 2012 WL 1032478, *4 (W.D. Pa. March 27, 2012) (dismissing FMLA claim for money damages by former county court employee because "suits against States under [the self-care provision of the FMLA] are barred by the States' immunity as sovereigns.") (citing *Coleman*).

25

Accordingly, the Eleventh Amendment shields Julius and DRS, as arms of the State, from liability for Reinhold's FMLA claims and Counts IX and X should be dismissed as to them.[12]

### D.  Sovereign Immunity

Pennsylvania law generally extends the doctrine of sovereign immunity to damage claims for state law torts against "the Commonwealth, and its officials and employees acting within the scope of their duties." 1 Pa. C.S.A. § 2310.[13] The statute further provides that such parties "shall continue to enjoy sovereign immunity and official immunity ... unless the General Assembly shall specifically waive immunity," except for several narrow enumerated exceptions. 1 Pa. C.S.A § 2310; *McGrath v. Johnson*, 67 F. Supp.2d 499, 511 (E.D. Pa.1999); *Tinson v. Pennsylvania*, No. Civ. A. 93-3985, 1995 WL 581978, at *6 (E.D. Pa. October 2, 1995). State sovereign immunity includes both immunity from suit in federal court and immunity from liability and that a State may waive one without waiving the other. *Lombardo*, 540 F.3d at 193.

_____

[12] FMLA claims other than for self-care would still be actionable, although the amended complaint makes no such claims.

[13] "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S.A. § 2310.

Sovereign immunity extends to state agencies which are considered "arms of the state," as well as to employees of such agencies. *Bowers v. National Collegiate Athletic Association*, 475 F.3d 524, 545-546 (3d Cir.2007). An entity is properly characterized as an arm of the state when a judgment against it would have essentially the same practical consequences as a judgment against the state itself. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989) (internal citation omitted).

The Pennsylvania General Assembly has waived sovereign immunity in nine limited circumstances involving negligence. *See* 42 Pa. C.S.A. § 8522(b).[14] A Commonwealth agency and its employee acting within the scope of his employment is protected by sovereign immunity from intentional torts. 42 Pa. C.S.A. §8501; *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 868 F. Supp. 757, 762 (E.D. Pa.1994). A Commonwealth employee is still liable for willful misconduct committed outside the scope of his office or employment. *McGrath*, 67 F. Supp.2d at 512; *Cooper v. Beard*, Civ. A. No. 06-171, 2006 WL 3208783, at *16 (E.D. Pa. Nov. 2, 2006) ("[W]illful misconduct does not vitiate a Commonwealth

---

[14] The limited negligent categories where the Commonwealth has explicitly waived immunity are: 1) vehicle liability; 2) medical-professional liability; 3) care, custody, or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines.

employee's immunity if the employee is acting within the scope of his employment, including intentional acts[.]"); *LaFrankie v. Miklich*, 152 Pa. Cmwlth. 163, 171, 618 A.2d 1145, 1150–51 (1992).

Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpected by the employer. *Wesley v. Hollis*, Civ. A. No. 03–3130, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007).

The allegations of the amended complaint assert that the actions of the defendants were related to Reinhold's employment and were taken in an effort to cause her to retire, and that supervisors and/or managers directed her coworkers to commit the acts of which she complains. The amended complaint specifically alleges that "the named Individual Defendants and/or unnamed agents committed unlawful searches and violations of Plaintiff[']s rights during the course of their employment and during their working hours[.]" (Doc. 29, ¶44). Although the nature of plaintiffs' allegations suggest willful misconduct which was outside the scope of employment (e.g., spying on plaintiff while she went to the toilet, walking by her desk repeatedly to smell her after she agreed to wear Depends, and removing

personal items from her desk), plaintiff fails to make the necessary allegations. The only clear allegations of willful misconduct are in connection with the FMLA claims. And, as defendants note, the amended complaint does not state that the alleged actions were committed outside of the course and scope of employment. Accordingly, sovereign immunity shields the defendants from the present action and the motions to dismiss should be granted on such grounds, without prejudice to amend.[15]

*E.  FMLA*

Defendant contends that the FMLA claim is barred by the applicable statute of limitations, and that it fails to identify which FMLA provision defendant allegedly violated.

The FMLA requires covered employers to provide employees job-protected unpaid leave for qualified medical and family reasons. 29 U.S.C. § 2601(b). To accomplish these goals, the act provides that an eligible employee is entitled to 12 work-weeks of leave during any given 12-month period for certain qualifying

---

[15] Reinhold's argument that the personal property exception applies because her medical records were in the care, custody and control of the defendant is without merit. For this exception to apply, the personal property itself must cause the injuries, not merely facilitate it. *Pennsylvania State Police v. Klimek*, 839 A.2d 1173, 1175 (Pa. Commw. Ct. 2003) (citing *Warnecki v. Southeastern Pennsylvania Transportation Authority*, 689 A.2d 1023 (Pa. Commw. Ct.1997)).

events, including a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §2612(a)(1)(D). The FMLA further entitles eligible employees to reinstatement at the end of FMLA leave to the position of employment held before leave or to an "equivalent position." 29 U.S.C. §§ 2614(a)(1)(A), (B).

The FMLA provides a general two-year statute of limitations for violations of its provisions. Thus, an action must be filed within two years of the date of the last event constituting a violation of the FMLA. However, the FMLA also provides that plaintiffs have three years within which to bring claims for willful violations of its provisions. 29 U.S.C.A. § 2917(c)(2). "To successfully allege a willful violation of the FMLA, the plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Caucci v. Prison Health Services, Inc.*, 153 F. Supp.2d 605, 609 (E.D. Pa. 2001) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)).

There are two relatively distinct causes of action under the FMLA: (1) interference provisions declare it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in FMLA;  and (2) the statute prohibits an employer from discriminating or retaliating

against an employee for exercising rights under the FMLA. 29 U.S.C.A. § 2615(a)

(1, 2). The instant complaint makes averments for the both causes of action.

*1. Interference*

The statute mandates that employers fully accord their employees the right to

FMLA leave: "It shall be unlawful for any employer to interfere with, restrain, or

deny the exercise of or the attempt to exercise, any right provided under this

subchapter." *Id.* § 2615(a)(1).

In the recent case of *Haybarger v. Lawrence Cty. Adult Probation & Parole*,

667 F.3d 408 (3d Cir. 2012), the Third Circuit joined several other circuits in

holding that a public agency employee can be an FMLA employer within the

meaning of the statute, if he or she "exercises 'supervisory authority over the

complaining employee and was responsible in whole or part for the alleged

violation' while acting in the employer's interest." *Id.* at 417 (quoting *Riordan v.

Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987).[16] The court should look to the

totality of the circumstances rather than apply "technical concepts of the

employment relationship." *Id*. Factors which should be considered in determining

the economic reality of the employment situation include whether the individual

---

[16] Defendant Bonnie Julius filed a notice of new case law regarding this case on
February 1, 2012. (Doc. 46).

"'(1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.' " *Id.* at 418 (*quoting Herman v. RSR § Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999)).

In order to trigger FMLA protections, an employee need only show a failure to have received FMLA benefits that the employer had a duty to provide. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)). "To assert an interference claim, 'the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them.'" *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir.2006) (quoting *Callison, supra*). An interference claim "includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'" *Id*. (quoting 29 C.F.R. § 825.220(b)). An employee need not specifically mention the FMLA or assert rights under it to satisfy the notice requirement, but only state that leave is needed. 29 C.F.R. § 825.302(c); *Wilson v. Lemington Home for the Aged*, 159 F. Supp.2d 186, 192 (W.D. Pa.2001).

In her amended complaint, Reinhold alleges that she suffered from a serious medical condition from late July, 2009 through late September, 2009 but that defendants did not afford her the opportunity to fully utilize her FMLA leave.

(Doc. 29, ¶123). She further alleges that defendants failed to notify her of her rights under the FMLA. The amended complaint avers both that Reinhold was entitled to FMLA leave and that, despite providing defendants notice of her request for leave, they failed to give her proper notice of her request for leave; unreasonably withholding approval for medical leave; discouraging her from utilizing FMLA leave by imposing discipline on her; failing to follow normal procedures in processing her leave requests; and failing to properly communicate with her as to the status of her FMLA requests. (*Id*. ¶143). Reinhold also contends that the defendants attempted to coerce her to retire instead of allowing her to take leave. (*Id*. ¶134).

These allegations are sufficient to state a claim for interference under the FMLA. Accordingly, the motion to dismiss should be denied to the extent it alleges the amended complaint fails to state a claim for interference under the FMLA (Count IX).

*2. Retaliation*

To establish a prima facie case for retaliation under the FMLA, a plaintiff must show that (1) she took an FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to his

leave. *Conoshenti v. Public Service Electric & Gas Comp.,* 364 F.3d 135, 146 (3d Cir.2004).[17]

Reinhold has alleged facts to establish the first tow elements of an FMLA retaliation claim: she took FMLA leave and she was terminated. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (conduct which "alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affects his or her status as an employee'" is proscribed by Title VII), *overruled in part on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006) *and by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998).

As to the third factor in FMLA retaliation claims—a causal link—Third Circuit cases focus on two main factors: timing and evidence of ongoing antagonism. *Abramson v. Wm. Patterson College of N.J.*, 260 F.3d 265, 288 (3d Cir.2001) ("Temporal proximity ... is sufficient to establish the causal link. [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the

---

[17] "In analyzing retaliation claims under the FMLA, courts look to the legal framework established for Title VII claims." *Hicks v. The Tech Indus.*, 512 F. Supp.2d 338, 357 (W.D. Pa.2007).

intervening period."). However, a determination as to causation cannot be made on

a motion to dismiss.

> Plaintiff has also brought a retaliation claim under the FMLA. He claims that he suffered several adverse employment actions because he used his FMLA benefits, including losing his sick pay benefits, and being terminated. Provided plaintiff can causally connect these employment actions to his taking of FMLA leave, he could establish a *prima facia* case. *Conoshenti*, 364 F.3d at 146-48. However, we cannot make a determination as to causation in the context of a motion to dismiss. *See e.g., Ashton v. American Telephone and Telegraph Comp.*, 225 Fed.Appx. 61, 67-68 (3d Cir.2007) (causation decided on motion for summary judgment). Once a factual record is developed, we can properly evaluate the issue of causation. Therefore, the FMLA retaliation claim also survives a motion to dismiss.

*Hines v. Township of Harrison, Pa.*, No. 07-0594, 2007 WL 2907896, *2 (W.D. Pa.

Sept. 30, 2007). Accordingly, the motion to dismiss should be denied to the extent

it alleges the amended complaint fails to state a claim for retaliation under the

FMLA (Count X).

*F.   State Law Claims*

> *1. Pennsylvania Political Subdivision Tort Claims Act (PSTCA)*

Pennsylvania's Political Subdivsion Tort Claims Act ("PSTCA"), 42 PA.

CONS.STAT. § 8541, *et seq*., grants municipalities, municipal agencies, and

municipal officers acting in their official capacity immunity from liability for all

state law tort claims. Under the PSTCA, local agencies such are given broad tort

immunity. *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). The PSTCA only includes eight (8) exceptions to local agency immunity: vehicle liability; care, custody, or control of personal property; real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; and care, custody, or control of animals. *Id.* at § 8542(b). Pennsylvania courts have narrowly construed the exceptions to immunity based in the Act.  *Alston v. PW-Philadelphia Weekly*, 980 A.2d 215 (Pa. Commw. Ct. 2009), *reconsideration en banc denied, appeal denied* 993 A.2d 901 (Pa. Commw. Ct. 2010).

As noted above, municipal employees are provided immunity under the Act, to the same extent as their employer, so long as the act committed was within the scope of the employee's employment. 42 PA. CONS.STAT. ANN. § 8545; Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir.2006). A willful misconduct exception exists: a public official does not receive immunity when his action "constituted a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS.STAT. ANN. § 8550. Under this provision, public officials can be held liable for intentional torts. If an employee engages in willful misconduct, thereby losing individual immunity, local agencies are not liable for their employees' willful misconduct. *See DeBellis v. Kulp*, 166 F.Supp.2d 255, 278 (E.D. Pa.2001). "[E]ven where a public employee acts with a degree of culpability equivalent to "recklessness," Pennsylvania law

36

nevertheless affords him immunity." *Bright v. Westmoreland County*, 443 F.3d 276, 287 (3d Cir.2006) (quoting *Williams v. City of Philadelphia*, 131 Pa.Cmwlth. 71, 569 A.2d 419, 421-22 (Pa.Commw.Ct.1995)). Proof of conduct which surpasses the immunity under the PTSCA requires a "demanding level of fault." *Sanford*, 456 F.3d at 316.

In the present matter, Reinhold argues that the exception relating to the care, custody and control of personal property applies. She specifically contends that, by requiring others to monitor her, the defendants negligently disclosed her confidential medical information in its possession. However, defendants correctly note that to fall within the exception to immunity relating to personal property in the care, custody and control of the local agency, a plaintiff must allege a property loss suffered with respect to the personal property in the possession or control of a local agency. 42 Pa.C.S.A. § 8542 (b)(2).[18] The exception to immunity does not apply to personal injuries or damages for violations of constitutional rights. *See Laughman v. Com. of Pa.*, No. 1:05-CV-1033, 2006 WL 709222, *8 (M.D. Pa.

---

[18] 42 Pa.C.S.A. § 8542 (b) provides, in pertinent part,

> (2) Care, custody or control of personal property.--The care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

March 17, 2006) (even if forensic evidence were determined to be "personal property," plaintiff cannot bring a state law claim against county under § 8542(b) because he has not alleged a property loss as to deterioration of forensic evidence); *Kearney v. City of Philadelphia*, 150 Pa. Cmwlth. 517, 524, 616 A.2d 72, 75 (Pa. Commw. Ct. 1992) (claim fails to qualify as a cause of action under Section 8542(b) since plaintiff alleges that the City's actions caused personal injuries rather than property loss.).

The amended complaint alleges that the defendants alleged actions of the defendants occurred "during the course of their employment and during their working hours[.]" (Doc. 29, ¶44). With the exception of intentional torts like Reinhold's claim for intentional infliction of emotional distress, all state law claims are subject to the PSTCA. Such claims do not fall within any exception to the PSTCA. Thus, defendants, as municipal entities and employees thereof, are entitled to immunity under the PSTCA for all state law claims raised by the Reinholds. The motion to dismiss should, therefore, be granted on this issue. Nonetheless, the state law claims will be examined to determine if they are subject to dismissal on other grounds.

*2. Defamation/slander*

Under Pennsylvania law, the elements of a defamation claim are defined by statute. The statute provides that a plaintiff attempting to state a claim for defamation must establish:

(1)     The defamatory character of the communication.

(2)     Its publication by the defendant.

(3)     Its application to the plaintiff.

(4)     The understanding by the recipient of its defamatory meaning.

(5)     The understanding by the recipient of it as intended to be applied to the plaintiff.

(6)     Special harm resulting to the plaintiff from its publication.

(7)     Abuse of a conditionally privileged occasion.

42 Pa. C.S.A. § 8343(a).  *See also Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 476-77 (E.D. Pa. 2010.).[19]  "A statement is deemed to be defamatory 'if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule,

---

[19]  By the same token, a defendant bears the burden of demonstrating the following defenses, when raised, to a defamation claim: "(1) The truth of the defamatory communication. (2) The privileged character of the occasion on which it was published. (3) The character of the subject matter of defamatory comment as of public concern." 42 Pa. C.S.A. § 8343(b); *Winfrey*, *supra* at 477; *see also Bennett v. Itochu Intern, Inc.*, 682 F. Supp. 2d 469, 476-77 (E.D. Pa. Jan. 25, 2010).

or injure him in his business or profession.'" *Winfrey*, *supra* at 477 (quoting *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. 2008)).

Actions for libel or slander brought under Pennsylvania law must be commenced within one year. 42 Pa. C. S. A. § 5523(1). A statute of limitations begins to run at the time the plaintiff's cause of action accrues. *Barrett v. Catacombs Press*, 64 F.Supp.2d 440, 443 (E.D. Pa.1999) (citing 42 Pa. C.S.A. § 5502(a)). "The cause of action for defamation accrues on the date of publication of the defamatory statements." *Morris v. Hoffa*, No. 01-3420, 2002 WL 524037, at *2 (E.D. Pa. Apr.8, 2002).

In this case, the amended complaint reveals that the defamation and slander claim asserted against the defendants is untimely. Reinhold avers that the defendants communicated false information about her medical condition to others. She further contends that the misinformation indicated that Reinhold was feigning her problems, was lazy and slept on the job. However, she does not allege any action or statement made by the defendants after she stopped working on September 14, 2009.  The present action was filed in the Court of Common Pleas of York County on March 25, 2011. Accordingly, the claim was asserted well-beyond the applicable one year statute of limitations. The motion to dismiss should, therefore,

40

be granted as to Count III.[20, 21]

*3. Fourth Amendment*

The amended complaint asserts Fourth Amendment violations when,

Reinhold alleges, the defendants (1) conducted odor checks by smelling the area

around her person and desk; (2) peered into the bathroom stall to see if she was

asleep; and (3) searched her desk area. Defendants contend that these allegations

fail to state a claim under the Fourth Amendment.

The Fourth Amendment states: "The right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated ...." That the Fourth Amendment's protection extends beyond

---

[20] Additionally, defamation is not exception to general provision of tort immunity under
the PSTCA. *See Savokinas v. Borough of Avoca*, No: 3:01-CV-2311, 2008 WL 2622904,
* 9 (M.D. Pa. June 27, 2008) (dismissing plaintiff's defamation claim, to the extent it
sought monetary relief as opposed to equitable relief, noting that a willful misconduct
exception to PSTCA immunity does not apply to a municipality); *Cornell Companies, Inc.
v. Borough of New Morgan.* 512 F. Supp. 2d 238, 276 n.25 (E.D. Pa. 2007) (noting that
the PSTCA shields municipal defendants from liability to the extent plaintiff seeks to
recover for defamation and tortious interference); *Walker v. N. Wales Borough*, 395 F.
Supp. 2d 219, 230-31 (E.D. Pa. 2005); *Roskos v. Sugarloaf Twp.*, 295 F. Supp. 2d 480,
490 (M.D. Pa. 2003) (finding plaintiffs' defamation claim to be an intentional tort for
which local municipal agencies cannot be held liable under the PSTCA).

[21] Reinhold's argument that the discovery rule is applicable to toll the statute of
limitations is without merit. She knew or should have known of the underlying facts but
did not learn she may have a cause of action until she consulted with her attorney. *See
Gallucci v. Phillips & Jacobs, Inc.*, 418 Pa.Super. 306, 312–13, 614 A.2d 284, 288
(Pa.Super. Ct. 1992).

the sphere of criminal investigations is well-settled. *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 530, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government[.]" *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 613–614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). The Fourth Amendment applies when the government is investigating a crime as well when the government acts in its capacity as an employer. *Treasury Employees v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). In determining whether a Fourth Amendment privacy interest is at stake is a two-part analysis: "first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

The United States Supreme Court addressed the issue of the privacy expectations of governmental employees vis-a-vis the Fourth Amendment in *O'Connor v. Ortega*, 480 U.S. 709, 711, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987).[22] It observed that "[i]ndividuals do not lose Fourth Amendment rights merely because

---

[22] The plurality in *O'Connor* determined that the aggrieved party had an expectation of privacy with respect to the contents of his desk despite the fact that he was a public employee. *Id.* at 719, 107 S.Ct. 1492.

they work for the government instead of a private employer." 480 U.S. at 717, 107 S.Ct. 1492 (plurality opinion).With respect to governmental employers, "the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *Id*. at 718, 107 S.Ct. 1492. "In the case of searches conducted by a public employer, we must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace." *Id*. at 720. Where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation "for non-investigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id*. at 725–726, 107 S.Ct. 1492.

### a. *Search of desk*

Reinhold avers that the defendants conducted a search of her desk at or around the time of her termination and that personal items, including papers and a Union notebook, were seized. Defendants contend that the expectation of privacy in the workplace is far less than in other contexts. They additionally assert that the search was conducted after she was terminated, and thus Reinhold had no reasonable expectation of privacy. Consequently, they maintain that a Fourth Amendment claim for unreasonable search and seizure has not been stated.

43

The amended complaint asserts that Reinhold's desk was searched, and items therein seized, "[a]t or about the time [she] was terminated." (Doc. 29, ¶30). Thus, for purposes of a motion to dismiss, a reasonable interpretation of the allegation is that the desk was searched contemporaneously with her dismissal. At such time, an expectation of privacy could arguably still exist.

Moreover, although defendants are correct in their contention that a public employee's expectation of privacy at the workplace is not as broad as it would be in other contexts, "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government[.]" *O'Connor*, 480 U.S. at 717, 107 S.Ct. 1492. A legitimate expectation of privacy in one's desk and its contents is not unreasonable. *Konopka v. Borough of Wyoming*, 383 F.Supp.2d 666, 678–79 (M.D. Pa. 2005). The parties have not indicated, nor is it clear, why the search may have been necessary or what interests of the defendants justified the search. Consequently, whether the search of Reinhold's desk was reasonable is not readily apparent. For purposes of a motion to dismiss, Reinhold has stated a claim under the Fourth Amendment for the search of her desk.

### b. Smell checks

The amended complaint contends that defendants and others conducted "smell checks" on Reinhold to monitor her for odor in an attempt to pressure her to

44

resign. (Doc. 29, ¶ 29 N). The "smell checks" consisted of walking by her desk 15–20 times per day in to smell her. (*Id*. ¶ 29 J).

In the context of Fourth Amendment searches, courts have recognized that a search of articles within "plain view" does not violate the Fourth Amendment. *See generally Horton v. California*, 496 U.S. 128 (1990) (discussing plain view doctrine); *see also United States v. Reed*, 141 F.3d 644, 649 (6th Cir.1998) ("Just as the sniffing of contraband by trained canines does not constitute an unlawful search, neither does the viewing by humans of contraband in plain sight amount to an unlawful search. As long as the observing person or the sniffing canine are legally present at their vantage when their respective senses are aroused by obviously incriminating evidence, a search within the meaning of the Fourth Amendment has not occurred."). Courts have held that the "plain smell" doctrine is a logical extension of, and analogous to, the plain view doctrine. *See, e.g., United States v. Angelos*, 433 F.3d 738, 748 (10th Cir.2006) ("The plain smell doctrine ... is simply a logical extension of the 'plain view' doctrine") (internal quotation marks omitted); *see also Horton v. Goose Creek Independent School Dist.*, 690 F.2d 470, 477 (5th Cir.1982) ("The courts have in effect adopted a doctrine of 'public smell' analogous to the exclusion from fourth amendment coverage of things exposed to the public 'view.' ... The courts have reasoned that if a police officer, positioned in a place

where he has a right to be, is conscious of an odor, say, of marijuana, no search has occurred; the aroma emanating from the property or person is considered exposed to the public 'view' and, therefore, unprotected.").

The amended complaint does not allege that the defendants were not legally present within the office or that the used means other than the olfactory senses. While being subject to "smell checks" may be unpleasant and demeaning, such actions fail to amount to a Fourth Amendment violation. Accordingly, Reinhold has failed to state a Fourth Amendment claim for the smell checks and this claim is subject to dismissal, with prejudice.

### c. Viewing through bathroom stall partition

Reinhold also avers that the defendants, or others acting at their direction, listened in on and/or viewed her through the bathroom partition door while she was using the facilities in an attempt to determine if she was sleeping. She maintains that she has a legitimate expectation of privacy in the bathroom upon which the defendants intruded. (Doc. 29, ¶¶ 68, 69).

To have an expectation of privacy upon entering a public restroom is reasonable. *See, e.g ., United States v. Delaney*, 52 F.3d 182, 188 (8th Cir.1995) (recognizing that the "occupant of a toilet stall in a public rest room may have a reasonable expectation of privacy"). But that expectation by an occupant of a public

restroom stall is not absolute. *United States v. White*, 890 F.2d 1012, 1015 (8th Cir.1989), *cert. denied*, 497 U.S. 1010 (1990) "[A]n occupant of the toilet stall would reasonably expect to enjoy such privacy as the stall afforded." *Id.* (quoting *People v. Kalchik*, 407 N.W.2d 627, 631 (Mich. App.1987)). Therefore, to make an observation from a common area where one has a right to be and in a manner not unexpected by the person being observed does not constitute an illegal search. *U.S. v. Lewis*, 83 F.3d 416 (4th Cir. 1996) (finding that making observations from common area of the bathroom by looking through the gap between the stall door and the partition from four feet away, standing in a position where the observer had a legal right to be, and not positioning oneself in a way that would be unexpected by someone using the bathroom stall).

Reinhold contends that there is no allegation that the defendants observed her from an acceptable vantage point. (Doc. 44, p. 19). However, the amended complaint does not allege that the defendants were positioned in an unacceptable position either. (Doc. 29, ¶ 72). Thus, for purposes of a motion to dismiss, Reinhold could state a Fourth Amendment claim if the defendants positioned themselves in a way unexpected by someone using the bathroom stall. While all the required facts have not been alleged to state a claim upon which relief may be granted, this claim should be dismissed without prejudice.

47

*4. Intrusion into seclusion*

Related to Reinhold's Fourth Amendment claims is her intrusion into

seclusion claim, which she bases on the "smell checks" and the observation of her

while in the bathroom stall. Intrusion upon seclusion is defined as: "intentionally

intrud[ing], physically or otherwise, upon the solitude or seclusion of another or his

private affairs or concerns, ... if the intrusion would be highly offensive to a

reasonable person." Restatement (Second) of Torts sec. 652B.[23] To prevail on this

claim, a plaintiff must allege sufficient factual matter to show that (1) there was an

intentional intrusion; (2) upon his solitude or seclusion, or his private affairs or

concerns; and (3) that the intrusion was substantial; and (4) highly offensive.

*Truong v. Dart Container Corp.*, 2010 WL 4611980, at *7 (E.D. Pa. Nov. 12, 2010)

(citing *Clegg v. Falcon Plastics, Inc.*, 174 Fed.Appx. 18, 28 (3d Cir.2006) (citing

*Larsen v. Philadelphia Newspapers, Inc.*, 375 Pa.Super. 66, 543 A.2d 1181,

1186–1187 (Pa.Super.1988))). The invasion may be by physical intrusion into a

place where the plaintiff has secluded herself, by use of the defendant's senses to

---

[23] The Pennsylvania Supreme Court has not officially adopted the definition of intrusion
upon seclusion as set forth in the Restatement (Second) of Torts; however, it has relied
upon Section 652B of the Restatement in analyzing such claims. *Truong v. Dart
Container Corp.*, 2010 WL 4611980 at *7 (E.D. Pa. Nov. 12, 2010) (citing *Tagouma v.
Investigative Consultant Services, Inc., et al.,* 2010 PA Super 147, 4 A.3d 170
(Pa.Super.2010)).

48

oversee or overhear the plaintiff's private affairs, or by some other form of

investigation or examination into the plaintiff's private concerns. *See* Comment "b"

to § 652B.

Defendants premise their move to dismiss the intrusion into seclusion claim

on their argument on the Fourth Amendment claims— that there is no reasonable

expectation of privacy implicated by such actions. However, as noted above, the

observation of Reinhold in the bathroom stall may, arguably, state a Fourth

Amendment claim. No such claim, however, is actionable for the "smell checks."

Nonetheless, defendants also seek dismissal of this claim arguing it was filed

after the statute of limitations expired. A state claim for invasion of privacy is

subject to a one year statute of limitations. 42 Pa. C. S. A. § 5523(1). Indeed, the

allegations giving rise to this cause of action occurred on or before Reinhold's

termination on September 14, 2009.  The present action was commenced on March

25, 2011, clearly well-beyond the one year limitations period. Consequently, the

claim has not been timely asserted and it is subject to dismissal, with prejudice.

*5. Intentional infliction of emotional distress*

For a plaintiff to state a claim for intentional infliction of emotional distress,

he must establish: (1) the conduct of the defendant was intentional or reckless; (2)

the conduct was extreme and outrageous; (3) the conduct caused emotional distress;

and (4) the distress was severe. *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265,

1273 (3d Cir.1979). With respect to such a claim, the Pennsylvania Supreme Court

has observed:

> The conduct must be so outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized society.
> Described another way, it has not been enough that the defendant has
> acted with intent which is tortious or even criminal, or that he has
> intended to inflict emotional distress, or even that this conduct has been
> characterized by malice, or a degree of aggravation that would entitle
> the plaintiff to punitive damages for another tort.

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa.1998) (citations omitted). "[I]t is for the

court to determine in the first instance whether the defendant's conduct may

reasonably be regarded as so extreme and outrageous to permit recovery." *Johnson*

*v. Caparelli*, 625 A.2d 668, 671-72 (Pa. Super. Ct. 1993).

The gravamen of the tort of intentional infliction of emotional distress is

outrageous conduct; in Pennsylvania, "courts have found intentional infliction of

emotional distress only where the conduct at issue has been atrocious and utterly

intolerable in a civilized community." *Clark v. Twp. of Falls*, 890 F.2d 611, 623 (3d

Cir.1989) (internal quotation marks omitted). *See Williams v. U.S. Airways, Inc.*,

No. 06-4797, 2007 WL 2667981 at *7 (E.D. Pa. Sept. 5, 2007) (the conduct must be

so outrageous as to be beyond the bounds of decency and intolerable in a civilized

society). However, Pennsylvania courts have rarely held that a defendant's behavior constituted outrageous conduct. *Littleton v. State Farm Fire & Cas. Co.*, Civ. A. No. 07-1515, 2007 WL 3237516 at 4 (M.D. Pa. Oct. 29, 2007).

Additionally, a claim for intentional infliction of emotional distress requires a plaintiff to also establish physical injury or harm. *See Kazatsky v. King David Memorial Park*, 527 A.2d 988, 995 (Pa.1987)); *Hart v. O'Malley*, 647 A.2d 542 (Pa. Super.1994) ("it is clear that in Pennsylvania, in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiff must allege a physical injury"); *Rudas v. Nationwide Mut. Ins. Co.*, No. 96-5987, 1997 WL 11302, at *6 (E.D. Pa. Jan.10, 1997) (dismissing claim for intentional infliction of emotional distress where the plaintiff had not alleged physical injury). It is not enough to merely allege severe distress. *Fewell v. Besner*, 664 A.2d 577 (Pa. Super.1995) (affirming the grant of preliminary objections as to plaintiff's claim of intentional infliction of emotional distress where plaintiff failed to allege physical injury). In order to recover on a claim of intentional infliction of emotional distress, the plaintiff must put forth "competent medical evidence" supporting a claim for alleged emotional distress. *Kazatsky*, *supra* (holding that the plaintiff's recovery was barred by their failure to present competent medical evidence of their alleged emotional distress).

51

In the present case, defendants contend not only that a claim for intentional infliction of emotional distress is barred by the Workers Compensation Act, *see* 77 Pa. Stat. § 481(a), but also that Reinhold has failed to allege sufficiently extreme and/or outrageous conduct to state a claim.

In response to defendants' argument, Reinhold contends that, despite defendants' knowledge that she was ill, they acted in a manner to intimidate her and cause her to retire. In addressing this argument, she argues, in a conclusory manner, that by invading her privacy, defendants acted in an offensive manner which, she appears to contend, is sufficient to meet the high threshold of an intentional infliction of emotional distress claim. She also states that the claim should not be dismissed when "she had no opportunity to raise a claim under he Workers' Compensation Act" because she was "immediately terminated." (Doc. 44, p. 22).

In *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir.1997), the Third Circuit held that the exclusivity provision of the Pennsylvania Workers' Compensation Act bars claims for both negligent and intentional infliction of emotional distress arising out of an employment relationship. *Id.*; *Galezniak v. Millville Health Center*, No.4-11-CV-1719, 2012 WL 140220, *2 (M.D. Pa. Jan. 18, 2012) (citations omitted). Further, given the narrow construction of this cause of action and the extreme rarity for conduct to be found to rise to such a level, the

actions of which Reinhold complains is insufficient as a matter of law to establish a claim for intentional infliction of emotional distress. *See Galezniak, supra* at *3 ("[T]ermination, even termination alleging wrongful discharge and discrimination, has been found to not rise to the level of outrageous conduct.").

For these reasons, the amended complaint fails to state a claim for intentional infliction of emotional distress, and it is recommended that the motions to dismiss be granted on Count XI.

*6. Wrongful termination*

As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Rutherfoord v. Presbyterian Univ. Hosp.*, 612 A.2d 500, 505 (Pa. Super. 1992). "Pennsylvania law presumes that an employee serves at the pleasure of an employer and the relationship may be terminated by either party and at any time absent a specific term or duration." *Rogers v. Int'l Bus. Machs. Corp.*, 500 F. Supp. 867, 868 (W.D. Pa.1980) (citing *Cummings v. Kelling Nut Co.*, 84 A.2d 323, 325 (Pa.1951)). Pennsylvania law prescribes that at-will employment may be terminated for any reason, or no reason, provided that the termination is not contrary to public policy. *Kelly v. Ret. Pension Plan for Certain Home Office*, 73 F. App'x. 543, 544 (3d Cir. 2003) (citing *Clark v. Modern Group Ltd.*, 9 F.3d 321, 327–28 (3d Cir.1993)); *see*

53

*Shick v. Shirey*, 716 A.2d 1231 (Pa.1998); *Lekich v. Int'l Bus. Machs. Corp.*, 469 F.

Supp. 485, 488 (E.D. Pa.1979) ("A discharge may be for good reason or for no

reason, but not for an illegitimate reason.").

An exception to this rule exists "when the employer exercises his otherwise

absolute right to terminate the employment relationship in a manner which

contravenes or undermines an important public policy." *Molush v. Orkin*

*Exterminating Co., Inc.*, 547 F. Supp. 54, 56 (E.D. Pa.1982); *Rogers*, 500 F. Supp.

at 869 (limiting employer's power to terminate if related to a violation of a clear

mandate of public policy). "[T]he employee must point to a clear public policy

articulated in the constitution, in legislation, an administrative regulation, or a

judicial decision." *Hunger v. Grand Central Sanitation*, 447 Pa. Super 575, 670

A.2d 173, 175 (Pa. Super. 1996) (citing *Jacques v. AKZO Int'l Salt, Inc.*, 619 A.2d

748 (Pa. Super. 1993)).

The simple articulation of the policy, however, is not enough; the statute,

constitution or judicial decision "must be applicable directly to the employee and

the employee's actions." *Id.* "An essential element in permitting a cause of action for

wrongful discharge is a finding of a violation of a clearly defined mandate of public

policy which 'strikes at the heart of a citizen's social right, duties and

responsibilities.'" *Yetter v. Ward Trucking Corp.*, 585 A.2d 1022, 1026 (Pa.

Super.1991) (citing *Hineline v. Stroudsburg Elec. Supply Co., Inc.*, 559 A.2d 566

(Pa. Super. 1989)); *see Burkholder v. Hutchinson*, 589 A.2d 721, 724 (Pa.

Super.1991). "The public-policy exception is generally broken down into three

categories: an employer cannot: (1) require an employee to commit a crime; (2)

prevent an employee from complying with a statutorily imposed duty; or (3)

discharge an employee when a statute specifically prohibits it from doing so."

*Diberardinis-Mason v. Super Fresh*, 94 F. Supp. 2d 626, 629 (E.D. Pa. Apr.14,

2000).

In the present matter, defendants contend that Reinhold has failed to articulate

a recognized public policy mandate that has been violated and, additionally, that an

alleged violation of a federal statute does not fall within the public policy exception.

The Pennsylvania Supreme Court has made it clear that a plaintiff may only bring a

claim for wrongful termination if his or her termination violated the public policy of

Pennsylvania. *Conklin v. Moran Industries, Inc.*, No 11-411, 2011 WL 2135647, *5

(E.D. Pa. May 31, 2011). The possibility that an individual's termination violated

federal law is itself insufficient to establish that his or her termination violated

Pennsylvania public policy:

> in order to set forth a claim for wrongful discharge a Plaintiff must do
> more than show a possible violation of a federal statute that implicates
> only her own personal interest. The Plaintiff in some way must allege

55

that some public policy of this Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth.

*Id.* (quoting *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 289 (2000)).

Thus, Reinhold cannot premise her wrongful discharge claim on alleged violations of federal statutes, as these are insufficient to establish a violation of Pennsylvania public policy. However, Reinhold also asserts that her invasion of privacy claims could articulate a violation of public policy where the invasion of privacy is substantial and highly offensive. While it may be true that a plausible action could be stated where an employer encroaches into an area of an employee's life where it has no legitimate interest, in making her argument, Reinhold neglects to relate her discharge to the alleged invasion of privacy claims. She does not aver that she was terminated for what defendants observed through the bathroom stall partition or what items were found in her desk. As she has failed to articulate a public policy exception to the at-will employment doctrine, she has failed to state a claim for wrongful termination and this claim (Count XII) is subject to dismissed, without prejudice. *See Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 627 (3d Cir. 1992) ("That an employer may be liable in tort for invasion of privacy is not a basis

for making it liable for wrongful discharge.") (dissenting opinion of motion for

rehearing en banc).

### 7. *Loss of consortium*

Loss of consortium is a valid, distinct cause of action under Pennsylvania

law. *See Koenig v. Progressive Ins. Co.*, 410 Pa.Super. 232, 239 n. 6, 599 A.2d 690,

693 n. 6 (1991). It is defined as a

> right growing out of the marriage relationship which the husband and
> wife have respectively to the society, companionship and affection of
> each other in their life together. As thus defined and limited, an
> interference with this right of consortium by the negligent injury to one
> spouse, should afford the other spouse a legal cause of action to
> recover damages for that interference.

*Burns v. Pepsi–Cola Metropolitan Bottling Co.*, 353 Pa.Super. 571, 575, 510 A.2d

810, 812 (1986) (quoting *Leo v. Bottman*, 40 Wash.Co. 105, 108–09 (Pa.1960)). A

spouse's loss of consortium claim is derivative of the validity of the injured

spouse's claim. *See Nationwide Mutual Insurance Co. vs. Cosenza*, 258 F.3d 197

(3d Cir.2001); *Beswick v. Maguire*, 2000 Pa.Super. 60, 748 A.2d 701, 705 (2000);

*Barchfeld v. Nunley by Nunley*, 395 Pa.Super. 517, 577 A.2d 910 (1990);

*Scattaregia v. Shin Shen Wu*, 343 Pa.Super. 452, 495 A.2d 552 (1985);*Winner v.

Oakland Township*, 158 Pa. 405 (27 A. 1110) (1893).

Plaintiff Kenneth Reinhold has alleged he "has lost the comfort and companionship of his spouse due to the extreme and outrageous treatment of his spouse by the defendants." (Doc. 29, ¶ 196). This is sufficient to state a claim of loss of consortium. *Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558, 564 (E.D. Pa. 2000). Defendants premise the motion to dismiss the loss of consortium claim on Barbara Reinhold's failure to allege a valid tort claim. However, having concluded that Reinhold has stated claims as to some of the causes of action in her complaint, such an argument is without merit. Consequently, Reinhold has stated a claim for loss of consortium.

### 8. Attorneys fees and punitive damages

Defendants also assert that attorneys fees are not recoverable absent express authority, agreement of the parties or some other established exception. *Mosaica Acad. Charter Sch. v. Commonwealth*, 572 Pa. 191, 813 A.2d 813, 822 (Pa.2002)). Arguing that the amended complaint fails to state one of these sources of recovery, defendants contend that any claim for attorneys fees is precluded. Reinhold has not addressed this argument and thus, under the applicable Local Rules, it is deemed unopposed. *See* M.D. Pa. L.R 7.6.  Accordingly, it is recommended that any prayer for relief in the form of attorneys fees be dismissed, without prejudice.

Defendants additionally contend that punitive damages are not recoverable from governmental agencies or their agents acting in their official capacity. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (absent a statute to the contrary, punitive damages cannot be awarded against a government entity.); *Brown v. Nutrition Mgmt. Services Co.*, No. 06–2034, 2009 WL 222352, at *3–4 (E.D. Pa. Jan.29, 2009), *aff'd in relevant part*, 370 F. App'x 267, 270 (3d Cir. Mar. 17, 2010 (no recovery of punitive damages under FMLA); *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 570 (3d Cir.2002) (punitive damages not available under PHRA); *Marchese v. Umstead*, 110 F.Supp.2d 361, 373 (E.D. Pa.2000) (punitive damages are not recoverable against a municipality under § 1983); *Joseph M. v. Northeastern Educational Intermediate Unit 19*, 516 F.Supp.2d 424, 444 (M.D. Pa. 2007) (defendants, as local agencies under the PSTCA, cannot be held liable for punitive damages) (citing *Marko v. City of Phila.*, 133 Pa. Cmwlth. 574, 576 A.2d 1193, 1194 (Pa.Commw. Ct.1990)).

Reinhold does not address these arguments in her brief in opposition to the motion and, thus, under the applicable Local Rules, it is deemed unopposed. *See* M.D. Pa. L.R 7.6. Accordingly, it is recommended that the motions to dismiss be granted on claims for attorneys fees and punitive damages.

59

## G.  High public official immunity

The DRS Defendants also assert that Julius is immune under the doctrine of high public official immunity. Reinhold contends that Julius does not qualify as a high public official and/or that her conduct was not in futherance of her official duties.

High public official immunity under Pennsylvania common law protects high public officials from suits for damages for actions taken or statements made in the course of their official duties. *Durham v. McElynn*, 565 Pa. 163, 772 A.2d 68, 69 (Pa.2001); *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892, 895 (1952). The immunity goes so far as to cover statements or actions motivated by malice when they are made or taken within the scope of the official's duties or authority. *Matson*, 88 A.2d at 895. The privilege is not for the benefit of the official, but to protect "'society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.'" *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194, 1196 (1996) (quoting *Montgomery v. City of Philadelphia*, 392 Pa. 178, 140 A.2d 100, 103 (1958)).[24]

---

[24] The doctrine of high public official immunity existed prior to Pennsylvania's enactment of the PSTCA and was not abrogated by it. *See Durham v. McElynn*, 565 Pa. 163, 772 A.2d 68, 69 (Pa.2001) (citing *Lindler v. Mollan*, 544 Pa. 487, 677 A.2d 1194, 1196 (Pa.1996)).

60

The parties dispute whether Julius, as deputy court administrator for York County, qualifies as a "high public official" for whom the immunity may be applicable. Whether or not a public official is protected by the privilege depends "upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Montgomery*, *supra* at 105 (citations omitted). The Pennsylvania Supreme Court, in determining whether immunity should be granted, has observed that it is "the public interest in seeing that the official not be impeded in the performance of important duties that is pivotal." *Durham*, 772 A.2d at 70. Once a court has determined that high public official status applies, it considers two factors to determine whether the high public official acted within the scope of his duties at the time of the alleged action: (1) the formality of the forum in which the alleged defamation occurred; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages. *Hall v. Kiger*, 795 A.2d 497, 501 (Pa. Commw. Ct. 2002).

While case law has found several types of public official for whom the immunity applies, there appears to be no case law finding that deputy court administrators qualify as high public officials. Moreover, inasmuch as the resolution of this inquiry would require an examination of facts beyond the four corners of the amended complaint, for purposes of a motion to dismiss, Julius has not

demonstrated that she is unequivocally entitled to high public official immunity. Consequently, it is recommended that the motions to dismiss be denied on this issue.

## IV. Recommendation

For the foregoing reasons, it is respectfully recommended that the motions to dismiss (Docs. 33, 35) be granted in part and denied in part. Specifically, it is recommended that:

1.  The motions to dismiss be denied as to York County on grounds of failure to exhaust. The motions to dismiss should be granted as to all other defendants, without prejudice, for failure to exhaust.

2.  The York defendants are not entitled to immunity under the Eleventh Amendment and the motion to dismiss should be denied on such grounds as to them. However, Eleventh Amendment immunity precludes plaintiffs' claims as to DRS and Julius and thus all Counts against them are subject to dismissal, with prejudice, under the Eleventh Amendment.

3.  Counts IX and X (FMLA) are subject to dismissal, with prejudice, to the extent they assert claims against York County, DRS and the individual defendants in their official capacities. Counts IX and X are not subject to dismissal to the extent they assert claims against the individual defendants in their individual capacities.

4.  The motion to dismiss should be denied as to Julius on grounds of high public official immunity.

As to plaintiffs' state law claims:

5.   Plaintiff has failed to state a claim as to Count I (Agency-Respondeat superior), and that claim should be dismissed, with prejudice.

6.   Counts II, III, IV, V, XI, XII and XIV are subject to dismissal, without prejudice, because they are precluded by state sovereign immunity under 1 Pa. C.S.A. §2310.

7.   Counts II, III IV, V, XI, XII and XIV are subject to dismissal, with prejudice, as defendants are immune under the PSTCA.

8.   The motions to dismiss be granted as to Counts II and III, with prejudice, under the applicable statutes of limitations.

9.   Count IV (Fourth Amendment search) is subject to dismissal, in part, for failure to state a claim. Specifically, plaintiff has stated a Fourth Amendment claim as to the search of the desk; plaintiff has failed to state a Fourth Amendment claim as to allegations that she was viewed through a bathroom stall door and this claim is subject to dismissal, without prejudice; plaintiff has failed to state a Fourth Amendment claim as to allegations that defendants smelled plaintiff and/or the area around her and this claim is subject to dismissal, with prejudice.

10.  Count XI (Intentional infliction of emotional distress) is subject to dismissal, with prejudice, for failure to state a claim as it is precluded by the Workers Compensation Act.

11.  Count XII (wrongful termination) is subject to dismissal, without prejudice, for failure to state a claim.

12.  Count XIV (loss of consortium) is not subject to dismissal for failure to state a claim.

13.  Any claims for attorneys fees are subject to dismissal, without prejudice.

14.  Any claims for punitive damages are subject to dismissal, with prejudice.

63

Signed August 31, 2012

_____
MILDRED E. METHVIN
U. S. MAGISTRATE JUDGE